**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 9 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
## TENH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

DARRYL J. PETERSON,

     Defendant - Appellant.

No. 02-3076

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 01-CR-40053-01-SAC)**

---

**On the Briefs:**

David J. Phillips, Federal Public Defender and Marilyn M. Trubey, Assistant Federal Public Defender, Topeka, Kansas, for Defendant-Appellant.

Eric F. Melgren, United States Attorney and Nancy Landis Caplinger, Assistant U.S. Attorney, Topeka, Kansas, for Plaintiff-Appellee.

---

Before **SEYMOUR**, **HENRY** and **BRISCOE**, Circuit Judges.

---

**SEYMOUR**, Circuit Judge.

Darryl J. Peterson was convicted of mail fraud and tax evasion and sentenced to thirty months on each count, to run concurrently. He now challenges the district court's sentencing decision on two grounds. He contends the court erred in determining the amount of loss and in refusing to group the two counts of conviction. For the reasons set forth below, we affirm.

**I**

During a three year period of contract employment with two companies, Midwest Staff Leasing, L.L.C., and Midwest Construction Staff Leasing, L.L.C., Mr. Peterson embezzled funds and used the mail to cover up his embezzlement. In addition, he failed to report the embezzled funds on his income tax returns. In fact, he failed to file any individual income tax returns or pay any individual income taxes for a period of three years roughly coinciding with the embezzlement. In that same period, no employment taxes were withheld from his salary. Although Mr. Peterson did file a tax return for the last calendar year in which he embezzled funds, he did not include the embezzled amounts as income.

Mr. Peterson was charged with one count of mail fraud in violation of 18 U.S.C. § 1341, and one count of tax evasion in violation of 26 U.S.C. § 7201. He pled guilty on both counts. At the sentencing stage, the district court calculated Mr. Peterson's base offense level from its determination of the amount of loss

sustained. The court considered arguments on the possibility of a multiple count adjustment, but declined to group the counts. Mr. Peterson challenges both the amount of loss and the refusal to group the counts.

## II

For the purpose of determining a base offense level, the district court was required to calculate the total amount of loss resulting from Mr. Peterson's illegal activities. We review factual determinations such as this for clear error. *United States v. Schild*, 269 F.3d 1198, 1200 (10th Cir. 2001).

The district court explicitly referred to the evidence it considered on the amount of loss, including the victim's spreadsheets itemizing each check written during the relevant period and noting whether each check was authorized or not. The court also considered the victim's affidavit as to the amount of loss. Although Mr. Peterson asserts the amount was actually much lower than the figures put forward by the victim, he has not pointed to any evidence supporting the figure he advocates, nor any evidence disputing the reliability of the victim's calculations. He simply contends instead that the district court erred in making its determination based on what he asserts were "self-serving statements of the victim," not amounting to a preponderance of the evidence. Aplt. Br. at 7.

Based on the evidence before it, the district court determined by a

preponderance of the evidence that the total amount of loss as a result of Mr. Peterson's embezzlement was $529,006.99. We are not persuaded the court clearly erred in reaching this result.

## III

Having determined the base offense level, the district court considered Mr. Peterson's arguments in favor of grouping the tax evasion and mail fraud counts for a multiple count adjustment pursuant to U.S.S.G. § 3D1.2(c). That guideline provides:

> All counts involving substantially the same harm shall be grouped together into a single Group. Counts involve substantially the same harm within the meaning of this rule:
>
>  . . .
>
> (c) When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts.

Mr. Peterson contended the two counts of conviction should be grouped under § 3D1.2(c) because the guideline for tax evasion in U.S.S.G. § 2T1.1(b) includes a two level increase for the failure to report income exceeding $10,000 in any year from criminal activity. Two levels were thus added to Mr. Peterson's base offense level for income generated by the mail fraud pursuant to § 2T1.(b). Nevertheless, the district court was not persuaded that grouping was appropriate.

-4-

We review *de novo* the district court's interpretation and application of the sentencing guidelines. *United States v. Chavez-Valenzuela,* 170 F.3d 1038, 1039 (10th Cir. 1999). The circuits are divided over whether to group mail fraud and tax evasion under § 3D1.2(c). We have not directly addressed the question in the context of that guideline, but have done so under § 3D1.2(d). *See United States v. Lindsay*, 184 F.3d 1138, 1142-43 (10th Cir. 1999) (holding mail fraud and tax evasion do not involve substantially same harm so should not be grouped).[1]

Mr. Peterson points to a Fifth Circuit decision holding that the two crimes should be grouped under § 3D1.2(c) where, as here, the offense level for tax evasion is enhanced two points for unreported income from mail fraud. *United States v. Haltom*, 113 F.3d 43 (5th Cir. 1997). On the other hand, the Third, Fourth, and Sixth Circuits have held that tax evasion should not be grouped with mail or wire fraud or with money laundering. *Weinberger v. United States*, 268 F.3d 346, 354-55 (6th Cir. 2001) (rejecting grouping of tax evasion and mail fraud counts); *United States v. Morris*, No. 00-4043, 2000 WL 1260162 (4th Cir. Sept. 6, 2000), *cert. denied*, 531 U.S. 1203 (2001) (no error in refusing to group money laundering and tax evasion counts); *United States v. Vitale*, 159 F.3d 810,

_____

[1]U.S.S.G. § 3D1.2(d) provides that counts involve substantially the same harm "[when] the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm, or if the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior."

813-15 (3d Cir. 1998) (declining to group wire fraud and tax evasion). The Third Circuit dismissed the *Haltom* rationale as unpersuasive, and expressly declined to follow an advisory issued by the Sentencing Commission's Training Staff stating that tax evasion should always be grouped with mail or wire fraud. *Vitale*, 159 F.3d at 815 (affirming reasoning in *United States v. Astorri*, 923 F.2d 1052 (3d Cir. 1991), and declining to follow *Questions Most Frequently Asked About the Sentencing Guidelines*, Vol. V, March 1, 1992). The Training Staff advisory is not binding and does not represent the Commission's official position on the matter. *Id.* at 815. The Third Circuit reasoned that tax evasion and wire fraud represent different criminal conduct and grouping them in this type of case "would have the anomalous result that an enhancement designed to increase a sentence has the effect of reducing it." *Id.* at 814.

When we addressed grouping counts of mail fraud and tax evasion under U.S.S.G. § 3D1.2(d), we held that the two offenses involve different harms and should not be grouped. *Lindsay*, 184 F.3d at 1142-43. In declining to group these two crimes, we pointed out that the victims of the offenses are distinct because society is harmed by tax evasion, whereas an individual is harmed by mail fraud. Moreover, we said the offenses involve distinct behavior, and the measures of harm attributable to each offense are distinct. *Id.* at 1143. Relying on *Lindsay*, the district court here similarly emphasized the differences between tax evasion

and mail fraud:

> To put it succinctly, the mail fraud and tax evasion convictions are based on different elements, affected different victims, and involved different criminal conduct. To commit these crimes, the defendant had to make separate decisions to violate different laws. These differences, as well as the different harms, demonstrate the convictions are not "closely related" for purposes of § 3D1.2.

> Moreover, the court believes the specific offense characteristic for failure to report criminally-derived income is not sufficiently based here on conduct embodied in the mail fraud count as to warrant grouping. Section 2T1.1(b)(1) speaks to the defendant failing to report or identify the source of income coming from criminal activity. The conduct embodied in the mail fraud conviction was the defendant obtaining by mail the checks written by Ms. Arnold for employment taxes and using those monies to conceal what he had embezzled from the companies. The defendant also used the mail to have the company's bank statements sent directly to him in order to keep others from learning about his embezzlement. In other words, the specific offense characteristic for the tax evasion count relates to the defendant's subsequent decision and conduct regarding the tax treatment of those monies he embezzled from the companies, and this conduct is not embodied within the defendant's use of the mail to conceal the embezzlement from the victims. The court finds this is not a situation of double counting.

Rec., vol. II, Ruling on Objections to the Presentence Report at 9-10 (citation omitted).

We agree with the district court's reasoning and we note as well that the enhancement in § 2T1.1(b)(1), the tax evasion guideline, serves a different purpose than the enhancement in § 2F1.1(b)(1)(k), the mail fraud guideline, which is yet another reason there was no impermissible double counting in this case. *See United States v. Flinn*, 18 F.3d 826, 830 (10th Cir. 1994) (no double counting

where enhancement provisions serve different purposes). The purpose for the increase under § 2F1.1(b)(1)(k) is to account for the seriousness of the crime in terms of the amount of money involved. The purpose for the increase under § 2T1.1(b)(1) is to account for the fact that

> [c]riminally derived income is generally difficult to establish, so that the tax loss in such cases will tend to be substantially understated. An enhancement for offenders who violate the tax laws as part of a pattern of criminal activity from which they derive a substantial portion of their income also serves to implement the mandate of 28 U.S.C. § 994(i)(2).

U.S.S.G. § 2T1.1 Background.

Applicaton Note 5 to § 3D1(c) elaborates on the applicability of the subsection, emphasizing that it applies only where the two counts are "closely related." U.S.S.G. § 3D1.2(c), comment. (n.5). We are convinced that tax evasion and mail fraud are not closely related because the victims of tax evasion and mail fraud are not the same, the offenses involve distinct behaviors, the purposes of the enhancements are different, and the harms attributable to each crime are dissimilar. Accordingly, the district court correctly declined to group the tax evasion and mail fraud counts in this case.

We **AFFIRM**.