**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**BRUCE W. GRAHAM**
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

FILED
Oct 16 2012, 8:31 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JUAN MANUEL CORREA, JR., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1202-CR-105 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1103-FB-8

**October 16, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Gang leader Juan Manuel Correa appeals his thirty-one year sentence imposed by the trial court. Correa pled guilty to class B felony burglary and class C felony intimidation. The trial court sentenced Correa to consecutive sentences of twelve years for burglary and seven years for intimidation, and an additional term of twelve years due to his criminal gang activity. Correa contends that the trial court abused its discretion during sentencing and that his sentence is inappropriate in light of the nature of the offenses and his character. Finding no abuse of discretion and concluding that Correa has not met his burden to show that his sentence is inappropriate, we affirm.

**Facts and Procedural History**

In January 2010, Correa was the leader of a gang called the Southside Raza in Lafayette. He was tired of people telling him and the other gang members that they were "punks" and "nothing." Tr. at 31. On January 28, 2010, sixteen-year-old Correa forced two members of the Southside Raza, Efrain Antonio-Contreras ("Efrain") and Benigino Astorga-Quiroga ("Bennie") to go with him to the home of Phillip Miller to steal firearms. Correa had been friends with Miller's stepson and knew that Miller had several firearms in the home. Correa threatened Efrain and Bennie that if they did not accompany him to Miller's home, they would be guilty of a "violation" and would be punished by having every other gang member beat them for thirteen seconds. *Id*. at 31-32. Correa, Efrain, and Bennie broke into Miller's home and stole ten firearms, including shotguns and rifles. The three took the guns to Correa's house, and Correa hid the guns underneath a mattress in his bedroom.

2

The members of the Southside Raza later convened at Correa's house to discuss what to do with the stolen weapons. Although the original plan was to sell the guns for money, the gang decided to keep the guns as a sign of the gang's strength. Correa suggested that the gang could use the weapons to rob a nearby house rumored to have cocaine. During the meeting, gang members posed for pictures with the stolen guns.

A little less than a month later, although uninvited, Correa attended a wedding reception at the Conservation Club. After getting into an altercation with some of the guests, including an individual named Daniel Ortega, Correa went to his house to retrieve one of the stolen shotguns. He returned to the Conservation Club and waved and pointed the shotgun around the crowded room. As he pointed the gun at a group of people, he stated, "You're not going to mess with me any longer," and "Who wants to f**k with Manuel." *Id*. at 13. Correa then fired a shot into the ceiling. He eventually left the club, but planned a "hit" on Ortega that was to occur in the summer. *Id*. at 37. Correa ordered Efrain to be the lookout for that shooting.

Aware that authorities were looking for him in connection with his crimes, Correa fled to Illinois and later returned to Indiana in September 2010. In March 2011, the police finally apprehended Correa as he hid inside the attic of his parents' home. After the juvenile court waived jurisdiction over Correa, the State charged him with class B felony conspiracy to commit burglary, class B felony burglary, class D felony theft, class C felony intimidation, class D felony criminal recklessness, and class D felony pointing a firearm. The State also

sought a sentence enhancement due to Correa's involvement in gang activity. Correa pled guilty to all of the charges without a plea agreement on November 29, 2011.

A sentencing hearing was held on January 17, 2012. Prior to sentencing, the trial court merged Correa's convictions for conspiracy to commit burglary and theft into his class B felony burglary conviction. The court also merged his convictions for criminal recklessness and pointing a firearm into his class C felony intimidation conviction. During sentencing, the trial court found seven aggravating factors and five mitigating factors. The court sentenced Correa to consecutive sentences of twelve years for the burglary conviction and seven years for the intimidation conviction. The court further sentenced Correa to an additional twelve-year term due to the crimes being committed in furtherance of gang activity, for an aggregate sentence of thirty-one years.[1] The trial court suspended five years of his sentence to probation, resulting in a total executed sentence of twenty-six years. This appeal followed.

## Discussion and Decision

### I. Abuse of Discretion

Correa first contends that the trial court abused its discretion when it sentenced him. Sentencing decisions are within the sound discretion of the trial court and reviewed only for an abuse of that discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on*

---

[1] Indiana Code Section 35-50-2-15(b) permits the State to seek to have a person who allegedly committed a felony offense sentenced to an additional fixed term of imprisonment if the State can show beyond a reasonable doubt that the person knowingly or intentionally was a member of a criminal gang while committing the offense and committed the felony offense at the direction of or in affiliation with a criminal gang.

4

*reh'g*, 875 N.E.2d 218. An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. A trial court may abuse its discretion in sentencing by failing to enter a sentencing statement, entering a sentencing statement that explains reasons for imposing a sentence which the record does not support, omitting reasons that are clearly supported by the record and advanced for consideration, or giving reasons that are improper as a matter of law. *Id*.

### A. Aggravating Circumstances

Correa claims that the trial court abused its discretion by relying on improper aggravating circumstances. Specifically, the trial court found the following aggravating factors: (1) Correa's juvenile criminal history; (2) Correa committed a crime of violence in the presence of a person less than eighteen years of age; (3) an incident involving Correa at the Tippecanoe County Jail while the current case was pending; (4) the seriousness of the current offenses; (5) Correa evaded law enforcement; (6) Correa's substance abuse; and, (7) prior attempts at rehabilitation have been unsuccessful.

We initially note that Correa does not challenge the propriety of some of those aggravating factors and, regarding several of the factors, merely argues that the trial court assigned the factors too much weight. To the extent that Correa contends that the trial court gave any particular aggravating circumstance too much weight, that argument is not available on appeal. The trial court is no longer obligated to weigh mitigating and aggravating factors

5

when imposing sentence, and thus the trial court cannot be said to have abused its discretion in failing to assign proper weight to certain factors. *Id*. at 491.

Correa argues that the trial court abused its discretion in finding that a misconduct incident involving Correa at the Tippecanoe County Jail constituted an aggravating circumstance. Jail misconduct may be properly considered as an aggravating factor. *Field v. State*, 843 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*. Correa admits that although he indeed had an altercation with another inmate, he "did not strike anyone" and "was the youngest person in the jail pod, and was bullied by the other inmates." Appellant's Br. at 11. Therefore, he argues, the record does not support this aggravating factor. However, the trial court did not rely upon Correa's altercation with the other inmate when finding jail misconduct as an aggravating factor but instead specifically relied upon a separate misconduct incident during which Correa reacted violently when some of his visit time was "cut short." Tr. at 101. Correa has shown no abuse of discretion.

Correa similarly takes issue with the trial court's finding that prior attempts at rehabilitation have been unsuccessful, arguing that this finding is nothing more than "a rehash and restatement of Correa's minimal juvenile history." Appellant's Br. at 11. To the contrary, the record indicates that Correa, a repeat juvenile offender, has continually violated the terms of probation and various court orders during the two years immediately preceding his commission of the current crimes. He failed to participate in offered services, was twice arrested, found in possession of firearms, failed drug screens, and continued his gang

6

affiliation in defiance of a clear court directive. We cannot say that the trial court abused its discretion when it considered this behavior an aggravating circumstance.

Correa next argues that the trial court improperly considered the seriousness of the offenses as an aggravating circumstance. While we acknowledge that a material element of a crime cannot be an aggravating circumstance, the nature and circumstances of the crime may properly be considered an aggravating circumstance so long as the trial court discusses facts that go beyond the statutory requirements for the crime. *Gleason v. State*, 965 N.E.2d 702, 711 (Ind. Ct. App. 2012). Regarding the burglary, the trial court found it especially egregious that Correa committed burglary with the intent to acquire dangerous firearms, either to sell them or for personal protection of gang members. Regarding intimidation, the trial court noted that Correa threatened an entire group of people at a crowded wedding reception rather than simply one individual. The trial court provided sufficient discussion of the facts demonstrating how Correa's crimes exceeded the statutory requirements for conviction. The trial court did not abuse its discretion when it considered the seriousness of Correa's offenses as an aggravating circumstance.

### B. Consecutive Sentences

Correa maintains that the trial court abused its discretion when it imposed consecutive sentences. As noted above, the trial court found seven aggravating factors and only five mitigating circumstances. Indeed, Correa does not specifically challenge the propriety of several of the aggravating factors, including his juvenile history, his history of substance abuse, his evasion of law enforcement, or the fact that he committed an act of violence in the

7

presence of a minor. One valid aggravating factor alone is enough to support the imposition of consecutive sentences. *Owens v. State*, 916 N.E.2d 913, 917 (Ind. Ct. App. 2009). We find no abuse of discretion.

## II. *Appropriateness of Sentence*

Correa asks that we revise his sentence pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Upon appellate review, we have the power to affirm, reduce, or increase the sentence. *Akard v. State*, 937 N.E.2d 811, 813 (Ind. 2010).

In considering the nature of a defendant's offense, "the advisory sentence is the starting point the Legislature has selected as an appropriate sentence." *Anglemyer*, 868 N.E.2d at 494. Correa was sentenced to twelve years for class B felony burglary, which carries a six-to-twenty-year sentencing range and a ten-year advisory term. Ind. Code § 35-50-2-5. He was sentenced to seven years for class C felony intimidation, which carries a two-to-eight-year sentencing range and a four-year advisory term. Ind. Code § 35-50-2-6. The criminal gang felony sentencing statute provides that the court shall sentence the person

to an additional fixed term of imprisonment equal to the longest sentence imposed for underlying felonies. Ind. Code § 35-50-2-15(d)(2). Correa's total sentence consists of twenty-six years executed and five years suspended to probation. The difference between time executed and time suspended to probation is relevant in determining the appropriateness of a sentence. *Jenkins v. State*, 909 N.E.2d 1080, 1085 (Ind. Ct. App. 2009), *trans. denied*.

As to the nature of the offenses, Correa violently threatened two of his gang followers to help him break into Miller's home with the intent to steal a large number of dangerous firearms. They stole ten weapons, including shotguns and rifles. He initially intended to sell the guns but instead decided to keep the stolen weapons for personal use and as a signal of strength for his gang. A short time later, Correa brandished one of the stolen shotguns at a crowded wedding reception. He pointed that gun at the group of people gathered. The imminent danger created by Correa's offenses is significant and, quite frankly, unsettling. To make matters even more unsettling, Correa planned a "hit" on an individual to occur at a later date. Tr. at 37. Correa makes no attempt to downplay the seriousness of his offenses or his gang affiliation and we are unaware of any reason to make such arguments for him. The trial court imposed a sentence well under the maximum for the burglary and a sentence just shy of the maximum for the intimidation, with an additional twelve-year fixed term due to Correa's undisputed involvement in gang activity. Under the circumstances, we are not persuaded that the nature of the offenses warranted anything less.

Correa's sole argument for revision revolves around his character and, specifically, his young age at the time of the offenses. He had just turned sixteen years old when he

9

committed the burglary. However, despite his young age, the record indicates that Correa was hardly a naïve young man. He has been involved in the juvenile justice system since the age of ten. He continued to have numerous discipline problems culminating in a battery and disorderly conduct adjudication in 2007. Despite numerous attempts at probation, and various placements in both secure and nonsecure facilities, Correa has been unable to follow rules, pass drug tests, or to conform his behavior to that which is socially acceptable. At the time of the offenses, Correa was not simply a member, but was the leader of the Southside Raza. By all witness accounts, he is a violent individual and an admitted drug abuser. He knowingly evaded law enforcement in this case, and he continues to defy authority as evidenced by his jail misconduct. There is nothing about Correa's character to indicate that his twenty-six-year executed sentence is inappropriate. As our supreme court has noted, "[t]here are both relatively old offenders who seem clueless and relatively young ones who appear hardened and purposeful." *Ellis v. State*, 736 N.E.2d 731, 736 (Ind. 2000). He has not demonstrated that his sentence is inappropriate, and therefore we decline his invitation to reduce the sentence imposed by the trial court.

Affirmed.

RILEY, J., and BAILEY, J., concur.